THE COUNTY OF ESCAMBIA, IN THE STATE OF FLORIDA, *Appellant*, v. THE BLOUNT CONSTRUCTION COMPANY, A CORPORATION, *Appellee*.

Opinion Filed July 30, 1923.

Where a substantially just and equitable decree has been rendered in an accounting in equity, the decree will be affirmed on appeal.

An Appeal from the Circuit Court for Escambia County; A. G. Campbell, Judge.

Decree affirmed.

*R. Pope Reese* and *John P. Stokes,* for Appellant;

*Carter & Yonge,* for Appellee.

PER CURIAM.—The bill of complaint herein brought for an accounting and setlement under building contracts, was sustained on demurrer.    Escambia County v. Blount Constr. Co., 66 Fla. 129, 62 South. Rep. 650.

The issues having been made the cause was "referred to E. C. Maxwell, Esq., Special Master, to take an account of all dealings and transactions between the complainant and the defendant as to the matters set forth in the bill of complaint and the answer; that the said Master shall in taking said account, make unto the parties all just allowances, and after stating the same, shall show, upon the balance of said account, what may be due from either of the parties to the other of them, which shall be paid as this court shall hereafter direct; and that the said Master shall, in the making and stating of said account, have all · the powers conferred upon him by the rules in equity provided for a Master, and as may be provided by the statutes of the State of Florida."

In his report the Special Master stated:

"A principal question is whether the change of plans for the construction of the building applied only to the cell blocks or to all of the building as shown by the plans of the Southern Ferro Concrete Company.   The right to make the change from the Benz plans seems to be concluded by the decision of the Supreme Court when the case was before it.

"That the change as made applied to the whole building seems to me clear.   The bid for the work on the reinforced concrete basis was 'to erect County Jail Building as per plans prepared by the Southern Ferro Concrete Company,

of Atlanta, Georgia, making two cell blocks of concrete throughout, and using system of above firm in all reinforced concrete work.' These plans covered the whole building, and not simply the cell blocks. There is some conflict of testimony as to whether the County Commissioners in accepting this bid had the Southern Ferro plans before them. The natural presumption would be that in making a contract of this magnitude they would feel in duty bound to see what plans they were adopting. But whether they did so or not, the plans were a part of the bid, and when the bid was accepted it was for the erection of the building according to those plans.

"If any ambiguity was imported into the bid or contract by the reference made therein to cell blocks, it would, in my judgment, be set at rest by the conduct of the parties in performing the contract. For eighteen months the building was in course of erection, the whole of it being built according to the Southern Ferro plans, under the constant supervision of the architect employed by the county and the more or less casual inspection from time to time of members of the board; constant changes and changes for extras arose from month to month by reason of the change of plan being applied to the whole building instead of to the cell blocks only; these were approved by the architect, submitted to the board, some approved, and no objection shown to any on the ground that the building should have been erected according to the Benz plans until the final differences arose between the parties upon the tender of the building for acceptance.

"I find, therefore, that the Southern Ferro plans governed as to the entire building, and not as to the cell blocks only. This incidentally carries with it some of the claims for allowance to be made the county for cheaper construction under the Southern Ferro plans than under

the Benz plans; this saving having been, of course, one of the elements entering into the amount of the bid under the new plans.

"Claims are made by the complainant for damages for delays, some definite and some indefinite, in the performance of the contract by complainant, caused by the county or its agents; and the county on the other hand claims a large sum for demurrage for delay by complainant in completing the building.

"As to the first, while the evidence shows many delays on the part of the architect in furnishing instructions, and other circumstances from which some delay would result in the progress of the work, the evidence as a whole upon this point is indefinite as to much of the claim made, and other large parts of the claim seem to me clearly inadmissible, with much difficulty in finding a basis for separating what good there may be from the bad.

"As to the claim by the county for demurrage, it is patent that this resulted, at least in the greater part, from delay by reason of change of plans, deepening of foundations, and other acts of the county or architect, for which the complainant was not responsible.

"I think equity will be done by allowing neither of these somewhat vague and uncertain claims, or permitting the one to off-set the other."

A statement in detail of the account was made by the Special Master, and his report was confirmed by the Chancellor after overruling exceptions to the report filed by both parties. A decree was rendered for the complainant for the balance found to be due, with interest at 6% per annum from the date the suit was brought. The defendant county appealed.

This being an accounting in equity to be determined upon equitable principles, the decree rendered predicated

upon the report of the Special Master, is justified by the evidence showing the erection of a building under special .circumstances and conditions; and it cannot fairly be said on a careful consideration of the entire record that any material or substantial error has been committed in applying equitable principles to the evidence adduced.

There are many contested items of relatively small amounts, which taken separately without the special circumstances shown by the record, may appear doubtful; but if not *de minimis*, such items are not clearly shown to be erroneous or contrary to proper equitable conclusions in view of the whole record. The net amount due complainant when the suit was instituted should bear interest in order that complainant may be fully compensated for what was then due under the contract.

No material error being shown the decree is affirmed.

TAYLOR, C. J., AND WHITFIELD, ELLIS BROWNE AND WEST, J. J., concur.

TERRELL, J., not participating.